FILED
CLERK

3/8/2022 12:51 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELLYNN GREENHAUS, et al.,        *    Case No. 19-CV-5266(JS)
                                 *
               Plaintiffs,       *    Long Island Federal
                                 *     Courthouse
                                 *    100 Federal Plaza
     v.                          *    Central Islip, NY  11222
                                 *
LAURIE GERSH,                    *    March 4, 2022
                                 *
               Defendant.        *
                                 *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE JOANNA SEYBERT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:              EDWARD N. GEWIRTZ, ESQ.
                                 Law Offices of Edward N.
                                  Gewirtz
                                 60 East 42nd Street
                                 Suite 4600
                                 New York, NY  10165

For the Defendant:               STEVEN J. HARFENIST, ESQ.
                                 Harfenist Kraut & Perlstein,
                                  LLP
                                 3000 Marcus Avenue
                                 Lake Success, NY  11042

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

(Proceedings commenced at 9:54 a.m.)

THE CLERK:  Calling Civil Case 19-CV-5266, Greenhaus and others v. Gersh.

Counsel, please state your appearances for the record.

MR. GEWIRTZ:  Edward N. Gewirtz of Bronstein, Gewirtz & Grossman for the plaintiffs.

MR. HARFENIST:  Steven Harfenist, Harfenist Kraut & Perlstein. for the defendants.  Good morning, Your Honor.

THE COURT:  Good morning to you both.  Is there anyone else on the line?

MS. GERSH:  Roxanne Gersh, Your Honor, and good morning as well.

THE COURT:  I'm sorry.  Please repeat your name. There's a bit of an echo in the courtroom here.

MS. GERSH:  Roxanne Gersh.  Good morning, Your Honor.

MR. GERSH:  Kevin Gersh, Your Honor.

THE COURT:  And for plaintiffs, Mr. Gewirtz, is there anyone --

MR. GEWIRTZ:  (Indiscernible.)

THE COURT:  No one?

MR. GEWIRTZ:  (Indiscernible) Roxanne is a plaintiff.  Beyond that, no.

THE COURT:  Okay.

3

Yesterday's conference did not result in any type of settlement, so my last instruction to Mr. Harfenist was that he confer with his client and see what number he's willing to pay and to have it done quickly so that the property can be marketed, the house that's on the property, that can be resolved, and this case or cases can be concluded.

Now officially, this is a hearing here to see if the term sheet can be dealt with to see if the parties can reach any settlement.  If not, there's a possibility of the case dragging out even longer and going to mediation once again to get an interpretation on the term sheet.

So, Mr. Harfenist, what is Kevin Gersh --

MR. HARFENIST:  Yes, Your Honor.

THE COURT:  -- willing to pay?

MR. HARFENIST:  Well, there's a couple things, Judge, and it's a little more complicated than that, in that yesterday -- and I spent the vast majority of the day on this matter.  There were two issues.

One was the financial term, and two was how to deal with the visibility of the sale price with regard to the West Hills Day Camp house.

And we also, if you remember, Your Honor, we had the issue with regard to, you know, whether Roxanne's funds had to be put in trust.  That last issue is over.  They do not have to be put in trust.  They do not have to -- we agree that they

4

do not have to be put in trust.  So that -- that piece is off the table.

We did not reach an agreement with Mr. Gewirtz as to how to deal with the allocation of the proceeds to the portion of the -- the property that's owned by West Hills Day Camp.

I -- we went back and forth quite a bit yesterday on it, and then late yesterday I got a call from Kevin who's not -- and who indicated to me that he had spoke to Roxanne, and that Roxanne had indicated to him that he -- she was not being represented by Mr. Gewirtz and she did not want to go into a transaction with her sisters.

At that point, I believe Kevin gave Roxanne the dialing information, and hence, that's why she's on the phone. So that's the current status of the matter, Your Honor.

THE COURT:  Mr. Gewirtz, do you have any response to that?

MR. GEWIRTZ:  It's news to me.  I certainly represented her throughout the case when we had the mediation before Judge Skelos, Roxanne was on the phone.  She was in Puerto Rico on her cell phone, and she took part by phone just like her sisters took part in New York, and I was the attorney representing them there.

She's never -- and she even recently signed a letter, along with Effie, to me saying that she wanted to go ahead with the terms of the purchase at $8 million.

5

And pursuant to that sale, she would then get $200,000 a year until the property zoning gets changed, and then the rest of the money would come through depending on what the zoning change was.  So this is all news to me.

I was informed by my clients that Kevin had called Roxanne last night, misrepresented to her what the terms were of the transaction, told her she'll never see any money for years and years, and on that basis, she was upset and not happy and didn't want to go ahead.

And then I believe my clients -- the other clients contacted her and Effie also did explain that this was not the case, that she had been misinformed by Kevin, and they told me that she's back on track.  So this is a -- it's just a surprise to me and I -- since Roxanne is on the phone, I think she could speak for herself if there's --

THE COURT:  Okay.

MR. GEWIRTZ:  But she's never told me -- she's never told me she doesn't want me to continue representing her, and the information I have, aside from what she wrote a few weeks ago, is that she is currently on board as the correct terms are, that if somebody is going to misrepresent to her the terms and -- no, she wants to be getting $200,000 a year, which she would be getting.  So that's --

THE COURT:  All right.  Let me just see --

MR. GEWIRTZ:  -- as far as I know.

6

THE COURT:  Okay.  Mr. Gewirtz, let me just speak with Roxanne Gersh.

Are you on the phone?

MS. GERSH:  Yes, Your Honor.  Roxanne Gersh (indiscernible).

THE COURT:  Oh, all right.  And do you have any objection to being sworn in and I can take your testimony under oath and understand what's going --

MS. GERSH:  (Indiscernible.)

THE COURT:  -- here?  All right?

MS. GERSH:  Yes, Your Honor.

THE COURT:  All right.

MS. GERSH:  And, thank you very much for dealing with all this nonsense.  But, yes.

THE COURT:  Okay.  Ms. Gewirtz (sic), I'm going to have my courtroom deputy swear you in.  If you would, Eric?

(Ms. Gersh is sowrn.)

THE CLERK:  Thank you.

THE COURT:  All right.  I've been in charge of this case for, I guess it's a year or so, and I would like to understand what this situation is.  My understanding is that your brother, Kevin, is trustee for you with --

MS. GERSH:  As --

THE COURT:  -- respect to one of the trusts involved here.  Is that correct?

7

MS. GERSH:  As far as I know, my brother was assigned the trustee position without any consent of mine, but doesn't need to be.

THE COURT:  And your brother is in charge of your trust.  Is that what you're saying?

MS. GERSH:  Your Honor, may I speak freely?

THE COURT:  Sure.

MS. GERSH:  Okay.  So my father entrusted my brother.  I am not happy about that because my brother is my brother.  He's in the position right now to transfer the trusteeship, but that's another situation.

I have been uninformed by anybody verbally.  The attorney for my sister has never spoken to me.  He might have shot me emails, but I've never spoken to this man.  I've never paid him a dime.  I don't even know who he is.  I was in the conversation before at the mediation.  I was put on hold and mute the whole time.  So I really had no say in anything that went on.

My sisters have taken the liberty to speak for me and voice their opinion about what they think I want.  I am very clear on what I want, and at this -- Your Honor, if you don't mind, and I'm so sorry you have to deal with all the (indiscernible), that's a better word, I need to represent myself without anybody bearing any other interest in my future pertaining to them.

8

So if you would please, Your Honor -- I will do it as fast as I can, but I need time to look -- to get my own counsel without my brother, without my sisters, without hearsay, and so on.

THE COURT:  Okay.  So what I would suggest is that -- are you currently residing in Puerto Rico?  Where are -- where is your home?

MS. GERSH:  Yes, Your Honor.  I am residing in Puerto Rico for exactly this reason.  But yes, Your Honor, I am in Puerto Rico.

THE COURT:  All right.  And you're living in a private residence?

MS. GERSH:  Yes, Your Honor.  I am in a private residence.

THE COURT:  And how long have you been in Puerto Rico, Ms. Gersh?

MS. GERSH:  I'm in a living facility.  I have been here since February of 28.

THE COURT:  February --

MS. GERSH:  Oh, I'm sorry.  I'm -- no.  Yes.

THE COURT:  Okay.

MS. GERSH:  February 28th of 2001.  I mean, 2021.

THE COURT:  All right.  And when you say you're in a facility, what kind of facility is that, please?

MS. GERSH:  Well, no -- no, Your Honor.  I'm not in

9

a facility.  I'm in a condominium complex.

THE COURT:  Oh, a condominium complex.  Okay.  And do you have --

MS. GERSH:  I think the --

THE COURT:  -- the ability to go out and get your own lawyer, someone who's independent?

MS. GERSH:  Yes, Your Honor, I do.  Outside of the fact it's going to take me just a minute more due to the fact I have to contact, and have to contact me back.

I don't think because we are in this -- 2000, it was more than a week, a week to obtain counsel, and for him to review the situation and we can come up with a more conclusive yes or not, here or there, so on and so forth.

THE COURT:  All right.  So how long do you think you need to get a lawyer?

MS. GERSH:  Oh, all right.  To get one, like I said, I need about a week because I have a few people in front of me that I would just like to -- if you -- if you understand, I'd like to find out who they are before I sign on with them.

THE COURT:  Okay.

MS. GERSH:  So then doing my due diligence, and then for them to do their due diligence, and I would assume any reputable lawyer would need -- I really can't speak for them. I'd like to say a month, but they would have to speak to you about what they need to dissect this whole (indiscernible).

10

THE COURT:  Okay.  Ms. Gersh --

MS. GERSH:  (Indiscernible.) yes.

THE COURT:  -- let me ask you -- stop.  Ms. Gersh, let me ask you, where did you get these lawyers that you're considering hiring?  Who gave the names to you?

MS. GERSH:  Okay, one was from a man named Donald Nates (ph).  He's an attorney and a DA at one time.  The other one is from my best friend and a real estate broker, Effie DeSantis.  That is so far the two attorneys I have.  I was going -- I'm looking to get another one from a man (indiscernible) attorney, but he's a friend of my brother's.  So you know, a good attorney is a good attorney.  I just wanted to hear from him.

THE COURT:  Okay.  I just want to make sure, Ms. Gersh, that you're not getting the names from any of the interested parties here.  In other words, I would think that you wouldn't get the names either plaintiff's counsel or from defense counsel, because you'll need an attorney --

MS. GERSH:  Yes, yes, yes.

THE COURT:  -- who is admitted in the federal court, Eastern District of New York, in good standing.  And I would suggest you'd want someone who's familiar not only with the area here on Long Island, but also very familiar with surrogate's practice, and also with respect to the issues here in the real estate venture and what can happen in terms of the

11

trust and estates and trust law.

So, Mr. Harfenist, did you --

MS. GERSH:  Can I ask a question, Your Honor?

THE COURT:  Sure.

MS. GERSH:  I'm sorry.  I don't know what surrogate means.

THE COURT:  Surrogate is the court that would be in charge of any trust.  I don't know what the provisions of your trust are with respect to you having -- you know, you don't have a guardian, correct?

MS. GERSH:  Your Honor, I don't need one, I don't think.

THE COURT:  Okay.  I'm not saying that you do, I just wanted to make sure.

MS. GERSH:  I know.

THE COURT:  All right.  Yes, thank you.  Is there anything that you need to add, Mr. Harfenist?

MR. HARFENIST:  I don't think so, Judge.

THE COURT:  And, Mr. Gewirtz, is there anything you'd like to add?

MR. GEWIRTZ:  No, Your Honor.  If she finds independent counsel that's -- I'm more than happy with that.  That's no issue here.

THE COURT:  All right.

MR. GEWIRTZ:  I'm certainly happy to, you know -- if

12

I need to sign papers that would transfer, you know, representation, no problem.  Be happy to do that.

THE COURT:  All right.  Ms. Gersh, one thing I'd suggest you do as a good starting point is to contact -- or you can ask Effie to do it -- the Suffolk County Bar Association and see if they have any lawyers that specialize in trusts and estates and know something about the real estate market.  I gather she's suggested one person to you.

MS. GERSH:  Wait, trust and estate law?  Trust -- write this down, trust and estate law.

THE COURT:  Right.

MS. GERSH:  And real estate law.

THE COURT:  Right.

MS. GERSH:  Those two attorneys I need to look for.  Okay.  Okay.

THE COURT:  Okay.

MS. GERSH:  (Indiscernible) lawyer.

THE COURT:  Great.

MS. GERSH:  Okay.

THE COURT:  As long as they're admitted here in the federal court, it should be no problem.  I'm going to give you two weeks to get this done, because I know that your sisters very much would like to have the property sold, whether it be to them or to your brother, Kevin.  And there is a difference of opinion as to what's best for you, but from what you're

13

telling me, you understand the situation and you can represent yourself with counsel.

MS. GERSH:  Yes.

THE COURT:  All right.

MS. GERSH:  Good luck, Your Honor.  Thank you for being so patient, and I am so sorry, again, that you have to go through this.

THE COURT:  No, I don't -- that's --

MS. GERSH:  Thanks.

THE COURT:  -- that's what I'm on the bench for, to help resolve disputes.  All right.

MS. GERSH:  Right.  Exactly.  Right.

THE COURT:  So it's two weeks from now --

MR. GERSH:  Your Honor.

THE COURT:  Yes.

MR. GERSH:  I need --

THE COURT:  Yes.

MR. GERSH:  Your Honor, may I -- may I speak?

THE COURT:  Yes.

MR. GERSH:  This is Kevin Gersh.

THE COURT:  Oh, Mr. Gersh, I don't --

MR. GERSH:  Just, I want to --

THE COURT:  -- I don't need testimony from you now. I don't need you putting it on the record.  I think we've had enough today.

14

MR. GERSH:  (Indiscernible.).

THE COURT:  You're welcome.

MR. GERSH:  Okay.  Thank you.

THE COURT:  So --

MR. HARFENIST:  Kevin.

THE COURT:  All right, so a date for this case to be put on again.  Please hold on.

MS. GERSH:  Your Honor, thank you so much.

THE COURT:  You're welcome.  Just hold on.

MS. GERSH:  Write this down, honey.  Thank you, Your Honor.

THE COURT:  All right.

THE CLERK:  What do you want to do?  Two weeks from today?

THE COURT:  Is that possible?

THE CLERK:  Yeah, we could do that.

THE COURT:  Yeah, that would be the Friday you come back from London.  Is that okay?  Do you want me to do the week -- we can do it the week -- we can do it the week after, because then if you give her --

THE CLERK:  -- the two-week deadline, that will give her the 18th to find an attorney.

THE COURT:  Right.

THE CLERK:  Hopefully, he will file his appearance by then so we could do (indiscernible) the week after.

15

THE COURT:  Okay.  Let's put that down for the week after.

THE CLERK:  And then that would give us the week of the 21st, so we can do it on the 24th.

THE COURT:  Sure.  We're in the middle of the Lamay (ph) trial.  Why not?

THE CLERK:  Well, hopefully we'll be done -- well, we have to be done by then because we're (indiscernible).

THE COURT:  Jury selection.  Okay.

THE CLERK:  So, do you want to do that?

THE COURT:  All right.  All right.  I'm -- folks, I'm back on the line.  You have the two weeks to get a lawyer and we'll conference this on March 24th.  Eric, was that it?

THE CLERK:  That's correct, Judge.

MS. GERSH:  Thank you.

THE COURT:  All right.  Let me give you a time.

THE CLERK:  12:00.

MR. GEWIRTZ:  March 24.  That's about three -- three and a half weeks.  Almost four weeks, Your Honor.

THE COURT:  Yes, and the reason is, she's got two weeks to get a lawyer and I'm on a criminal trial and that's going to take precedent.  So it's March 24th, and it's at --

THE CLERK:  12:00, Judge.

THE COURT:  -- 12:00.  12 noon, please.

MS. GERSH:  (Indiscernible) time.

16

THE COURT:  All right.  And I gather in view of this, that there's not going to be a referral to the court mediation with Judge Skelos.  Well, let's wait until -- let's wait until --

MR. HARFENIST:  I think Judge Tillman --

THE COURT:  -- let's wait until Roxanne Gersh has a lawyer representing her.

MR. HARFENIST:  Yep.

THE COURT:  Thank you, folks.  Have a good day.

MS. GERSH:  Thank you, Your Honor.

MR. HARFENIST:  Thank you, Judge.

THE COURT:  Bye, bye.

MR. HARFENIST:  Bye, bye.

MS. GERSH:  Your Honor, have a great day in spite of it.  All right.

(Proceedings concluded at 10:12 a.m.)

17

I, CHRISTINE FIORE, Certified Electronic Court Reporter and Transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

March 7, 2022

_____

Christine Fiore, CERT

Transcriber