FILED
CLERK

3/31/22 10:03AM

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
                           :

ELLYN GREENHAUS, et al.,    :

                           :     19-CV-5266 (JS)(ST)

          Plaintiff,  :

                           :     March 24, 2022

                           :

          V.             :     Central Islip, NY

                           :

KEVIN GERSH, et al.,      :

                           :

          Defendant.  :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JOANNA SEYBERT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          EDWARD GEWIRTZ, ESQ.
                          BRONSTEIN GEWIRTZ & GROSSMAN LLP
                          60 East 42nd Street Ste 4600
                          New York, NY 10165

                          BRYAN LEWIS, ESQ.
                          Lewis Johs Avallone Aviles, LLP
                          1377 Motor Parkway, Suite 400
                          Islandia, NY 11749

For the Defendant:          STEVEN HARFENIST, ESQ.
                          Harfenist Kraut & Perlstein LLP
                          3000 Marcus Avenue Suite 2e1
                          Lake Success, NY 11042

Court Transcriber:          ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          274 Hovey Road
                          Milo, ME 04463
                          Aria@leinen.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK:  Calling case 19-CV-5266, Greenhaus and others v. Gersh.

Counsel, please state your appearances for the record.

MR. GEWIRTZ:  Edward Gewirtz of Bronstein Gewirtz & Grossman, for the plaintiffs Laurie Gersh and Ellynn Greenhaus.

MR. LEWIS:  Bryan Lewis of Lewis Johs Avallone Aviles for Roxanne Gersh.  Roxanne Gersh is also listening in on the line, your Honor.  Good morning or good afternoon.

MR. HARFENIST:  Steven Harfenist of Harfenist Kraut & Perlstein for Kevin Gersh, and Mr. Gersh is on the line as well.

MR. GEWIRTZ:  Your Honor, this is Edward Gewirtz.  My client Laurie Gersh is on the line also.  Also, we have on the line Craig Kirsh, who is a potential developer of the property that we had mentioned before to the Court.  He's also on the line.

THE COURT:  All right.  So this is an open conference.  There's nothing confidential here.

Mr. Lewis, you recently came on to the case to represent Roxanne.

Roxanne, you are on the line?

MS. R. GERSH:  Yes, ma'am, I am.

THE COURT: Okay. And you've chosen Mr. Lewis to represent you in this matter.

MS. R. GERSH: I have, your Honor, thank you.

THE COURT: Good.

Mr. Lewis, have you had an opportunity to review some of the pleadings involved here, in particular the --

MR. LEWIS: I have.

THE COURT: -- mediation terms sheet. You have.

MR. LEWIS: I have, your Honor, yes. We've quickly gotten up to speed and I've reviewed the mediation -- post-mediation agreement as well as the pleadings, as well as some of the more recent letters that have gone back and forth about some of the issues that we're discussing.

THE COURT: Fabulous.

So let me start off with Mr. Gewirtz. You no longer represent Roxanne and you're now representing Ms. Greenhaus and Ms. Laurie Gersh. Are your clients interesting in proceeding with the sale since you have the potential developer, Mr. Kirsh, K-i-r-s-h, on the phone?

MR. GEWIRTZ: Yes, we are interested in

proceeding.  However, there is one issue that Mr. Kirsh has raised which is very important.  We've been advised through Laurie's son, Justin, who is connected with both Kevin and with his mother Laurie, that Kevin has threatened that if we buy the property, he will to the end of time obstruct any re-zoning changes to the property to stick it to us, and that's a bit problem for us.  So we really need in connection with the sale to also have the Court enjoin Mr. Gersh from doing anything to interfere with the re-zoning of the property.

THE COURT:  Let me hear from Mr. Harfenist and I assume he'll tell me what Mr. Hersh's position is on this.  Frankly, I think that this group is in need of more input from the Surrogate's Court and getting these family issues resolved.  However, I'm here for this now since it still is pending in federal court.

MR. HARFENIST:  Judge, this is Steven Harfenist.  There's a couple of issues that I think need to be addressed.  First of all, I'm not going to comment on Mr. Gewirtz's statement that Mr. Gersh will contest the zoning.  He would have every right as he owns property that's adjacent to the Gersh Realty property and the West Hills Day Camp property, under SERA, (ph) to put in whatever objections that he deems

necessary or appropriate under the Steep Slope Law and under -- I think it's going to be navigation law, issues with regard to this property, because there's an underwater stream.

There's nothing before the Court that would authorize it to enjoin him from exercising his rights under New York State law.  There's no interpretation of the mediation agreement that could reasonably say that he lost any of his rights to do that.  At any rate, we believe that the fact that they've even got the developer on the phone now here shows that their attempts to purchase the property is exactly what we said it was, which his an end run around Kevin's right of first refusal.

I will say this, Judge:  I agree that this matter should probably be sent back to Judge Skelos for some additional mediation to try to resolve all these issues.  Unfortunately, we walked out of there with a terms sheet that did not have complete terms.  The Court is well aware that there were attempts to create long-form agreements that were contemplated by the mediation agreement.  They did not happen for a myriad of reasons that the Court is aware of.  So at this juncture, that's what -- that is the position we necessarily believe.

We've also been told that -- well, it's not -- I'll leave it at that.

THE COURT: All right, you cannot talk over each other. That's number one. We have some chatter in the background.

Number two, I had always hoped that there would be an ounce, a snip of good faith on the parties' issues here. But I see that at every turn, there's another block, if you will, to resolve this case, and I'm not pointing fingers. What I'm attempting to do is say the following: My understanding is that you want the property is sold. Everyone is in agreement with that. What you don't want is this continued back and forth negotiation. So I'll be happy to send it to mediation if the plaintiffs think that it will accomplish something.

So let me ask the attorney newest to this litigation, Mr. Lewis, what's your view of going back to the mediator, if he'll take it, Judge Skelos, and seeing if you can resolve the various portions of the term sheet that have come into play?

MR. LEWIS: Thank you, your Honor. I don't necessarily think that Roxanne would be interested in that but for different reasons than simply that it may not be effective. At present, Roxanne is not inclined

to be a participant or partner with her sisters in the purchase offer and development project.  It's essentially going to put her into a multi-year project with a somewhat uncertain outcome.  It's going to make her a continued owner of the property with her sisters, which just given the track record here doesn't seem like a good recipe for success.  It's being opposed by Kevin Gersh, so it seems like there's going to be a rougher road ahead unless the parties can come to some sort of resolution.

So as of now, she's not inclined to partner with her sisters.  I think I heard from Mr. Gewirtz that they are still -- that they do not necessarily need Roxanne's participation in order to move forward with that project.  They don't need her credit bid to make it happen, so I guess that is what it is.  Over the last couple of days, I understand that before my involvement, there had been some discussions by both parties.  They both expressed an interest -- by parties, I mean the sister group and Kevin Gersh separately.  They have indicated a desire to perhaps buy out Roxanne's interest here.

THE COURT:  Both of them together, the sisters and Kevin, or is that going to be just the sisters or Kevin?

MR. LEWIS: Both sides have expressed an interest. My understanding is that Kevin has put -- I'm sorry, your Honor, there's a little bit of background noise. I don't know if you can hear me.

THE COURT: Yeah.

MR. LEWIS: Kevin has conveyed a fairly concrete offer and I've had discussions with Mr. Harfenist about it. I had a conversation with Mr. Gewirtz as well and he indicated that he thought his clients might be inclined to similarly make an offer. I emailed him yesterday and I'm not expecting him to get back to me as quickly as today but I put it to him and I'm putting it to the parties now on the call that if there is an interest in buying her out, they should convey that to me soon and that they should have concrete terms in writing that I can then present to Roxanne so that we can see if that's a viable way for Roxanne's interest at least to be dealt with and her removed from these discussions. I think I answered your question, your Honor.

THE COURT: Yes, you have.

MR. LEWIS: While I'm on a roll here, I do want everybody on the line, the attorneys who obviously know this but the parties as well, that I am involved now. I do not want direct contact with Roxanne about

these matters.  I'm certainly not asking anybody not to talk to their sister or their aunt about other things but I do want to put an end to the side calls that appear to be happening.  You know, she's a separately represented party now and I do insist that those communications come through me.

THE COURT:  Well, I certainly endorse that and I'm sure both Mr. Gewirtz and Mr. Harfenist, you will in fact abide by that.

MR. LEWIS:  They have, your Honor.  It's really for their clients and other family members that at this point, that's clear.

THE COURT:  I understand.

MS. R. GERSH:  Your Honor?

THE COURT:  Who is it?

MS. R. GERSH:  Your Honor, this is Roxanne Gersh.

THE COURT:  Yes.

MS. R. GERSH:  May I --

THE COURT:  You should speak through your attorney.

MS. R. GERSH:  All right, that's fine then.

THE COURT:  Great.  You can certainly speak to your attorney and he can express any issues that you might have.  So why don't we do this?  Put the matter

over for two weeks to see if you folks can work out buying out Roxanne's share in this property.

MR. GEWIRTZ:  Your Honor, this is Mr. Gewirtz.

THE COURT:  Please, let me finish, okay?

MR. GEWIRTZ:  Sure.

THE COURT:  Either it will be Kevin working a deal to get Roxanne's interest or Ellynn and Laurie working a deal to get Roxanne's interest.

Is that what's being proposed, Mr. Lewis?

MR. LEWIS:  That is my understanding, yes, your Honor.

THE COURT:  Is that your understanding, Mr. Harfenist?

MR. HARFENIST:  It is, your Honor.

THE COURT:  Is that your understanding, Mr. Gewirtz?

MR. GEWIRTZ:  It's my understanding that's what the Court has said and what the Court has prescribed.  However, just to add some insight into this, the two weeks is really not going to be helpful without the other issues dealt with because unless there is something to preclude Kevin from interfering with the re-zoning process, then there's no -- there's nothing to be done on our side.  We can't go head and

buy a property for eight million dollars that can't be re-zoned.

I think in this case, since Kevin as an owner is selling -- he's actually a seller here to us, we'd like to work with the developer to re-zone the property. If he's interfering with us being able to re-zone it, then that's bad faith in the sale and it destroys the whole mediation agreement. It destroys everything to say okay, fine, you can buy it for eight million dollars but I'm going to make sure it's worth nothing to you because I'll interfere with everything you ever try to do that makes it develop able. That's a big problem and I think waiting two weeks to just have that issue come up again is not helpful.

THE COURT: Well, I'm just a mere Article 3 judge. I don't have magical powers and I certainly cannot mend familial discord. So I think the wisest move would be to get Roxanne out of this litigation track and then we can rework any of the issues with regard to Kevin's involvement.

Mr. Harfenist, I'm sure you're in touch with your client. You understand the issues here and the need for development if it can possibly happen, all right?

MR. HARFENIST: I understand -- I

understand, your Honor, but there are -- what I don't think -- I'll be very brief about this.  Mr. Gersh lives next to the property.  There's nothing that ever says that it had to be developed into forty units, fifty units, sixty units.  He's not the only one who lives next to the property.  There's going to be substantial opposition to any development of this property and, Judge, you've been around a long time. You know that happens all the time in these types of suburban subdivisions.  This is not anything that is surprising to any sophisticated developer that he's going to have opposition.

THE COURT:  And I'm sure that he will understand that and make offers according to the potential for the property to be sold. But if Mr. Kevin Gersh is so concerned about the property, maybe he should just buy out everyone else and let it go.

MR. HARFENIST:  He's been trying to do that, Judge.  He's made an offer to buy the property.

THE COURT:  I understand.

MR. GEWIRTZ:  Your Honor, since I have Craig Kirsh on the line, can I have him just speak as to what the issue would be with the zoning if Kevin starts trying to interfere with it?  Since I have him on the line, if he could --

MR. HARFENIST:  Judge, this is premature. What are we even getting (ui) for?

THE COURT:  No, Mr. Harfenist, what's premature is a prediction of zoning problems that may come up, but I listened to you and now I'm going to listen to Mr. Kirsh.

MR. KIRSH:  Kirsh.

THE COURT:  Yes.

MR. KIRSH:  Good afternoon, Judge.  My position in this case is not predicated on one side or the other.  That doesn't pertain to me, nor will I get in the middle of that.  Just being a real estate developer, knowing that when any subdivision is done, there is a 100-foot radius map that is done and depending upon the lineal footage of the surrounding properties gives the surrounding neighbors the ability to force it into -- from a majority to a super-majority.

I'm not here to say whether Kevin's rights could be taken away from him as a homeowner.  I'm only here to say that if I was to bid knowing that I'm going to have Kevin and his surrounding properties contest my zoning, whether I decide to move forward, A, or B, lower my purchase price significantly knowing that it will go from a two- to three-year approval to possibly

an eight- to ten-year approval, if an approval -- if an approval even can happen.  That's the only reason I'm on the phone and I appreciate you listening.

THE COURT:  Thank you.

All right, two weeks to see if this can be resolved amongst the parties to take whatever interest that Roxanne had --

MS. R. GERSH:  Your Honor?  Your Honor?

THE COURT:  Can I just finish a sentence, okay?  -- to see what Roxanne's purchase price would be to buy her out.

Yes.  Roxanne, once again, I advise you that you have an attorney.  He's an experienced attorney. He knows land use and I'm sure he knows all about the matters involved here even though he's been here for a short time.

MS. R. GERSH:  Thank you, your Honor.

MS. L. GERSH:  Your Honor, may I speak? It's Laurie Gersh.

THE COURT:  Yes, Ms. Gersh, you can speak even though you have an attorney.

MS. L. GERSH:  Thank you, your Honor.  I just want to say that no person is going to want to buy the property if Kevin Gersh is going to object to any re-zoning.  We're not going to be able to sell the

property for any -- for anything but pennies.  And at that point, Kevin Gersh would like to buy it for himself and that is his motive in fighting the re-zoning, so he can purchase it at a nominal fee.  It's totally self-seeking.

THE COURT:  And to that, the Court responds there's not much I can do about re-zoning in the future.  So while everyone is disappointed, I think once again, you should seek to have this resolved because interest rates are going up.  You're not finding real estate developers like Mr. Kirsh coming out of the woodwork.  What's happening is that there will be a change in the market conditions.  There is no redevelopment project on Long Island when you're talking about putting in condominiums that doesn't get opposition so it's a fact of life.  You folks have to resolve this and I again suggest that maybe going to a mediator again might be the issue.  But the longstanding family battles, they're continuing no matter what.

Eric, can I have a date two weeks from now, and let's see if any offers are going to be made to Roxanne and what if anything can be done to speed this up.

THE CLERK:  Judge, do you want to be another

telephone conference?

THE COURT:  Absolutely.

THE CLERK:  Counsel, can we do April 14th at noon?

MR. LEWIS:  That is fine for Lewis Johs and for Roxanne Gersh.

MR. HARFENIST:  This is Steve Harfenist. Sorry, Ed, go ahead.

MR. GEWIRTZ:  I can do it at 12:00.  Just so the Court knows, that's a day before Passover starts. Hopefully, that won't create any issues.

MR. HARFENIST:  Judge, this is Steve Harfenist.  I'm actually going to be on vacation that week but I can handle the call at noon.

THE COURT:  Wonderful.  All right, I'll see you folks then.  Please make every effort you can --

MR. GEWIRTZ:  Your Honor, is it possible to do the call at a different time than noon?

THE COURT:  No, there isn't because I'm on trial.

MR. GEWIRTZ:  Okay.

THE COURT:  I have a lot going on.  Thank you.

MR. GEWIRTZ:  Okay.

THE COURT:  We'll do it at noon.

MR. HARFENIST:  Thank you, Judge.

THE COURT:  Have a good day.

MR. HARFENIST:  Take care, bye.

                    * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                    March 30, 2022